**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KATHRYN GREEN,<br><br>Defendant | Crim. No. 17-CR-10210-NMG<br><br>VIOLATIONS:<br><br>18 U.S.C. § 371 (Conspiracy to Distribute Controlled Substances)<br><br>18 U.S.C. §§ 981(a)(1)(C) & 28 U.S.C. § 2461(c) (Criminal Forfeiture Allegations) |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States submits this memorandum in advance of the sentencing on March 13, 2018 of Kathryn Green. Defendant has pleaded guilty to one count of conspiracy to traffic in counterfeit drugs in violation of 18 U.S.C. § 371. The Government has agreed to recommend a sentence at the low end of the Guidelines sentencing range as calculated by the Court at sentencing, to be followed by a term of supervised release of 12 months. The Defendant is seeking a sentence of time served (the days she was detained following her initial appearance).

**I.   Kathryn Green Actively Participated in a Criminal Organization that Brazenly Sold Counterfeit Steroids on the Internet**

*A. The Onyx Counterfeit Steroid Organization*

The Onyx Counterfeit Steroid Organization began manufacturing steroids using the "Onyx" label beginning in at least May 2015 and continuing until April 2017.[1] PSR ¶ 9. Tyler

---

[1] While the PSR states that Green's participation ran from February 2016 until April 2017, this was an error in the offense conduct (accurate as to another defendant) that the government failed to notice until preparing for the sentencing. It is undisputed that the organization actually began in at least May 2015. Not only is there evidence from that time period, but also Green's fiancé Tyler Baumann, the co-leader of the organization, pleaded guilty to an

1

Bauman and Phillip Goodwin were the co-leaders of the organization. PSR ¶ 12. Goodwin ordered both the raw materials for the injectable steroids and the labels and packing bearing the Onyx trademarks from overseas suppliers. PSR ¶ 9, 13. Goodwin then manufactured and packaged the Onyx steroids at his home. *Id*. While the Onyx-branded products were all injectable steroids, Bauman and Goodwin also obtained and sold other steroids in pill format ("orals"). PSR ¶ 10.

Bauman marketed the Onyx products on social media, primarily Instagram, and arranged for the sale of the products using email. PSR ¶ 9. Customers paid for the steroids via money remitters such as Western Union and MoneyGram. *Id*. Bauman directed members of the conspiracy to ship steroids to customers and to collect the proceeds. PSR ¶ 9, 12. The members of the conspiracy who collected the illicit customer payments used false identifications and multiple remitter locations to attempt to avoid suspicion while picking up the significant proceeds of the organization. PSR ¶ 9.

Baumann and Goodwin also conspired with Melissa Sclafani to launder the illicit funds of the organization. Together, Baumann and Goodwin were co-owners of a tanning business in Beverly, MA, Wicked Tan LLC ("Wicked Tan"). PSR ¶ 12. Sclafani operated Wicked Tan, and assisted Baumann and Goodwin in using the business to hide proceeds of the illegal activity, by creating the impression that the money was revenue generated by the tanning business. PSR ¶ 34.

Baumann both managed the critical logistical aspects of the operation and was the primary driver of the marketing of the Onyx steroids. Baumann created and cultivated a social media presence, using the persona "musclehead320," on a number of platforms. PSR ¶ 12. As "musclehead320," Baumann claimed to be "sponsored" by Onyx, and promoted the effectiveness

---

information admitting that the organization ran from at least May 2015 through April 2017. (17-CR-10211-DPW).

of the product. *Id*. At the same time, Baumann created and posted on Instagram accounts dedicated to the marketing and sale of the Onyx products, including "onyx_roid" and "onyxpharma." *Id*. These Instagram accounts directed potential buyers to email accounts, operated by Baumann, to place their orders. PSR ¶ 12. Baumann directly coordinated with Robert Medeiros, the primary shipper of the steroid products, to send the steroids to customers across the country. PSR ¶ 12, 28.

The organization was long running, nationwide, and very profitable. PSR ¶ 9, 10. The sale of just the Onyx-branded products alone exceeded $1.5 million dollars. *Id*.[2] Based on the estimates of co-conspirator Baumann, the Onyx sales (injectable steroids) represented half of the business; the other half was oral steroids (pills). By any estimate, the Onyx Steroid Organization was a multi-million dollar illegal steroid enterprise.

### B. Kathryn Green's Role in the Organization

Kathryn Green (K. Green) lived with Baumann in Shrewsbury, Massachusetts. K. Green pleaded guilty to participating in the conspiracy beginning no later than in or about November 2015 and continuing through April 12, 2017. K. Green's primary role in the conspiracy was to provide logistical support. First, from mid-2016 to early 2017, she provided weekly cash payments to Medeiros for his work shipping steroids to customers. PSR ¶ 14, 15. Second, K. Green directed her sister, Elizabeth Green (E. Green), who picked up customer's steroid payments form money remitters, using false names and identifications. PSR ¶ 16. The Green sisters then

---

[2] As noted in the PSR, the government has done additional analysis of the volume of Onyx products sold. While the initial methodology was found to contain some errors, by using a more rigorous analysis, based on the actual orders in the emails for particular months, the government verified that its initial estimate of an infringement amount between $1.5 million dollars and $3.5 million dollars is, even by conservative estimates, the appropriate guidelines range.

arranged for E. Green to deliver the proceeds to K. Green and Tyler. *Id*. Third, K. Green assisted Bauman by driving him around on business related to the conspiracy, including to Goodwin's employer, where they picked up and delivered items from Goodwin's car. PSR ¶ 24.

*The Status of other Charged Members of the Conspiracy*

On April 12, 2017, pursuant to a criminal complaint, six members of the conspiracy were arrested: Goodwin, Baumann, K. Green, Sclafani, Medeiros and Brian Petske (another shipper in the organization). Ultimately, only Goodwin and Petske were indicted and pleaded guilty; the remaining defendants each pleaded guilty to an Information. Later, E. Green also pleaded guilty to an Information.

The charges against each of the defendants in related cases is listed in the PSR at ¶ 6. K. Green and Baumann are the first defendants that will be sentenced: K. Green will be the first to be sentenced on Tuesday, March 13, 2018, in the instant case and Baumann's sentencing is scheduled to occur two days later, on March 15, 2018 (17-CR-10211-DPW).

**II.     Kathryn Green's Guidelines Calculations are Disputed**

*The Applicable Guidelines Calculations*

All parties agree that the base offense level pursuant to (USSG §2D1.1(c)(10)) is 20.

The parties have differing views with regard to what adjustment, if any, is appropriate based on K. Green's role in the organization:

- The government takes the position that K. Green is entitled to a two-point decrease based on her role in the offense, in accordance with USSG § 3B1.2(b).

- K. Green takes the position that she is entitled to a four-point decrease in the offense level based on her role in the offense in accordance with USSG § 3B1.2(a).

- The United States Probation Office takes the position that K. Green is not entitled to an adjustment for her role in the offense.

In addition, K. Green now argues that she is entitled to a further reduction in her guidelines calculation, claiming that she qualifies for the safety valve under USSG § 5C1.2, and thus must receive a two-level reduction in her offense level under USSG § 2D1.1(b)(17).

All parties agree K. Green is entitled to a decrease for acceptance of responsibility under USSG § 3E1.1(a), and a further reduction under USSG § 3E1.1(b) if her offense level is 16 or greater.

There is no dispute that K. Green is Criminal History Category I.

*The Role Reduction Adjustment*

There is not a significant dispute with regard to the actions K. Green took to further the conspiracy—the disagreement centers on what level of reduction, if any, is appropriate given those actions. K. Green was clearly not a leader or organizer in the organization. But neither was she a naïve bystander. She actively assisted the organization by providing logistical support, including by directing her sister in payment pickups and in paying the organization's primary shipper. As a result, she is charged with participating in the steroid distribution conspiracy—nothing more, but not less. This is significant—K. Green is charged only with participation in the lowest-level conspiracy in the organization. In contrast, her fiancé, Tyler Bauman, is also charged in a conspiracy to traffic in counterfeit drugs and a money laundering conspiracy, among other substantive charges. Thus, the charges in the case already reflect the more limited culpability of K. Green as compared to her co-conspirators. The government also agreed in the plea agreement to take the position that K. Green is entitled to a further two-level decrease based on her limited role. There is no basis for a further reduction.

*The Safety Valve Proffer*

The government learned of K. Green's intention to claim entitlement to the safety valve reduction for the first time at her plea hearing on August 3, 2017. The government responded at the hearing by stating that, while K. Green had come in to speak with the government, limitations had been placed on the discussion, and that it did not qualify as a safety valve proffer.

The principal purpose of the government's discussion with K. Green was assessing potential cooperation from K. Green's with respect to locating hidden assets and identifying drug traffickers with whom her husband dealt. As such, defense counsel sought the protection of a proffer letter, and such protection was provided. Participants in a straight-forward safety-valve proffer are not entitled to such protection, and in this case the government would not have afforded it to K. Green. Nor would the government have agreed, as it did, to limit questions regarding E. Green (generally to matters already discussed in the criminal complaint). Defense counsel now argues that K. Green answered all of the questions that she was asked about her sister. This misses the point: because limitations were placed on the proffer before it began, there were a number of questions that were *not* asked.

Since counsel's declaration at the plea hearing that they would be seeking a safety valve reduction, the government has repeatedly explained to K. Green that she was welcome to come in for an actual safety valve proffer. Months have passed. During that time, E. Green did come in for a safety valve proffer, with no proffer letter protection, and the government has supported a reduction in her sentence as a result. K. Green, in contrast, has declined to take advantage of the opportunity.

### III. A Term of Incarceration for Kathryn Green is an Appropriate Specific and General Deterrent

K. Green and Baumann have been together since 2010. She acknowledges that she was aware that he had a criminal record when she met him. Dkt. 86, p. 4. But she fails to discuss

that when she was with him in March, 2011, he was arrested for Distribution of Class B Drug (Cocaine). According to the Gardner Police Department report of the incident, discussed in the PSR of Tyler Bauman, the apartment Baumann and K. Green shared was searched in connection with that arrest, and officers located $1,167 in Green's pocketbook, a sock with cocaine packaged for distribution in the bedroom, and containers with false bottoms in the kitchen. Bauman PSR ¶ 67. At the time, Baumann told the officers that K. Green was unware of the drug activity. *Id*.

      Here, again, Baumann and K. Green have both repeatedly professed her lack of knowledge of the organization. Yet K. Green has ultimately admitted that she knew Baumann was selling steroids—and that she assisted in the work of the organization. The text messages included in the PSR evidence not only that she was actively involved but also that she had reason to know the scope and the volume of the conduct. *See e.g.*, PSR ¶ 18 (K. Green discussing with Baumann the amount of her sister's total pickups, either $8,683 or $8,740, and her resulting profit). K. Green literally saw the cash flowing through the organization—she collected illicit proceeds from her sister and paid out the salary of the primary shipper. She lived in a large home, drove a Cadillac Escalade, and stopped working in approximately 2012. It is impossible that K. Green failed to understand that her lifestyle was funded by criminal proceeds. Yet it appears that both she and Baumann concluded that the worst-case scenario was that Baumann would return to jail for his crimes. Both appear incredulous that she too will bear responsibility and face consequences for the role that she played. It is important for both K. Green herself and for others like her—woman who provide logistical support to criminal organizations run by their boyfriends while claiming selective ignorance about the scope of the activity—to understand that a term of incarceration is an appropriate and just result of their criminal conduct.

## CONCLUSION

For the above reasons, the government asks the Court to impose on Green a term of incarceration at the low end of the Guidelines sentencing range as calculated by the Court at sentencing, to be followed by a term of supervised release of 12 months, and forfeiture as noted in the plea agreement.  A $100 special assessment is also due.

                Respectfully submitted,

                ANDREW E. LELLING
                United States Attorney

By: */s/ Amy Harman Burkart*
                AMY HARMAN BURKART
                David J. D'Addio
                Assistant U.S. Attorneys

Dated:  March 10, 2018

**<u>CERTIFICATE OF SERVICE</u>**

  I, Amy Harman Burkart, hereby certify that on March 10, 2018, I served a copy of the foregoing by electronic filing on counsel for the defendant.

             <u>*/s/ Amy Harman Burkart*</u>
             Amy Harman Burkart